# In the United States Court of Federal Claims

No. 02-1078L

(Filed July 30, 2021)

```
* * * * * * * * * * * * * * * * * * * * *
                                        *
ERIKA BAILEY-JOHNSON,                   *
                                        *
                       Plaintiff,       *
                                        *
            v.                          *
                                        *
THE UNITED STATES,                      *
                                        *
                       Defendant.       *
                                        *
* * * * * * * * * * * * * * * * * * * * *
```

*Daniel J. Cragg*, Eckland & Blando LLP, with whom was *Lara R. Sandberg*, both of Minneapolis, Minn., for plaintiff.

*Joshua P. Wilson*, Natural Resources Section, Environmental and Natural Resources Division, Department of Justice, with whom was *Jean E. Williams*, Acting Assistant Attorney General, both of Washington, D.C., for defendant.

## ORDER

WOLSKI, Senior Judge.

This case was originally brought by Gary Bailey, a property owner who alleged that the denial of a Clean Water Act (CWA) section 404 permit, under 33 U.S.C. § 1344, and the issuance of a Restoration Order by the Army Corps of Engineers (the Corps), resulted in a taking of his property without just compensation, in violation of the Fifth Amendment. *See Bailey v. United States*, 78 Fed. Cl. 239, 241 (2007).[1] At the time the complaint was filed, Mr. Bailey had pending in the United States District Court for the District of Minnesota a lawsuit challenging these same actions of the Corps under the Administrative Procedure

---

[1] After his death, Mr. Bailey's daughter Erika Bailey-Johnson, his successor in interest, was substituted as the plaintiff. ECF No. 167. For the sake of convenience, the Court will use the term "plaintiff" to refer to either individual.

Act, 5 U.S.C. §§ 701–06. *See Bailey v. United States Army Corps of Engineers*, No. 0:02-cv-00639-RHK-RLE (D. Minn. March 15, 2002), Compl. ¶¶ 19–43 (D. Minn. Compl.). In that case, Mr. Bailey sought declaratory and injunctive relief against the Corps, but sought takings damages from state and local government entities. *See* D. Minn. Compl. at 14–15.

When the complaint was filed in our court, the existence of the district court lawsuit posed no problems for Mr. Bailey under 28 U.S.C. § 1500 (Section 1500), which bars our court from exercising jurisdiction over certain claims otherwise within our jurisdiction when the same or related claims were pending in another court at the time the matter was brought before us. *See* 28 U.S.C. § 1500. The Federal Circuit had definitively held that, for an earlier-filed and pending case to preclude one in our court, "the claim pending in another court must arise from ***the same operative facts***, and must seek ***the same relief***." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994) (en banc). But the Supreme Court subsequently eliminated the "same relief" requirement, holding that "[t]wo suits are for or in respect to the same claim, precluding jurisdiction in [our court], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011).[2]

Following this doctrinal change, the government moves to dismiss plaintiff's claims under Section 1500, contending that this case is indistinguishable from *Resource Investments, Inc. v. United States*, 785 F.3d 660 (Fed. Cir. 2015). U.S. Mot. to Dismiss (Def.'s Mot.), ECF No. 145, at 2, 5–7. In *Resource Investments,* the Federal Circuit affirmed the dismissal of a case alleging that a CWA section 404 permit denial resulted in a taking, applying the "act or contract" test for preclusion. *Res. Invs.*, 785 F.3d at 666–68. To the extent that the government argues that, for Section 1500 purposes, it is sufficient that the district court claims involve the same parties, the same conduct by the government and the same property as this suit, *see* Reply in Supp. Def.'s Mot., ECF No. 148, at 1, 4, the Court cannot agree. Although the decision from our court in *Resource Investments* found that Section 1500 applied because claims in both lawsuits involved the same permit denial, *see Res. Invs., Inc. v. United States*, 114 Fed. Cl. 639, 650 (2014), the Federal Circuit based its decision on "allegations that the Corps denied the permit, *and the alleged economic loss attributable thereto*." *Res. Invs.*, 785 F.3d at 665 (emphasis added). The latter included the allegation that the property owner "stood to lose the large sums already invested in the project, as well as the economic value of its investment in

---

[2] The undersigned is strongly of the opinion that Justice Sotomayor's interpretation of Section 1500 in that case was correct, recognizing that "claim" was originally a term of art in our jurisdictional statutes meaning a demand for money damages. *See Tohono O'Odham Nation*, 563 U.S. at 325 (Sotomayor, J., concurring in judgment).

the project site." *Id.* at 663 (internal quotations omitted). This suggests that for there to be sufficient overlap of operative facts for an earlier-filed claim to be considered the same as a takings claim for Section 1500 purposes, the claims must have more in common than the same permit denials or same ordered action by the federal agency.

Nor can the Court agree with the government's position that allegations raised against other, non-federal parties in the earlier-filed suit can be considered operative facts in the claims against the United States, when these are not incorporated by reference in the counts against the latter. *See* Tr., ECF No. 154, at 33:4–19, 34:2–8, 37:6–7, 39:17–21. Section 1500, after all, requires that claims be "against the United States" or those acting on behalf of the United States. 28 U.S.C. § 1500. Thus, the allegation that a state agency's action caused "severe economic loss or in the alternative total deprivation of use" and hence a taking, D. Minn. Compl. ¶ 50, cannot contribute to a finding of "substantially the same operative facts," *Tohono O'Odham Nation*, 563 U.S. at 317.

Unfortunately for plaintiff, the operative facts alleged in the district court counts against the Corps do involve whether the latter's actions resulted in a taking of plaintiff's property. In that case, Mr. Bailey contended that the Corps violated President Reagan's Executive Order 12630, 53 Fed. Reg. 8859–62 (Mar. 15, 1988), as the Corps "ha[d] not offered compensation to Plaintiff nor . . . conducted a before and after valuation of the affected properties to determine the existence of a taking as required by law." D. Minn. Compl. ¶ 42. In the case before our court, plaintiff alleges that the economic impact of the same actions of the Corps resulted in a taking for which compensation had not yet been paid. Compl., ECF No. 1, ¶¶ II, VII, XIII. Thus, central to the claims against the federal government that were pending in the district court were the economic impact of the Corps' decisions and the necessity of paying just compensation, making those APA challenges different from the typical ones based on procedural or jurisdictional irregularities. As these are among the operative facts in the takings claim in this court, when added to the permit denial and Restoration Order, there is sufficient overlap in operative facts for the claims in the two cases to be considered the same for Section 1500 purposes. *See Res. Invs.*, 785 F.3d at 665–68. The Court concludes, reluctantly, that the government's motion must be **GRANTED**.

Section 1500 has been variously (and correctly) described as: "an anachronism depriving litigants of a fair opportunity to assert their rights," *Lower Brule Sioux Tribe v. United States*, 102 Fed. Cl. 421, 424 n.4 (2011); *see also Keene Corp. v. United States*, 508 U.S. 200, 217 (1993) (discussing same criticism); "outdated and ill-conceived," *Low v. United States*, 90 Fed. Cl. 447, 455 (2009); "an awkward tool that has outlived its original purpose," *Passamaquoddy Tribe v. United States*, 82 Fed. Cl. 256, 262 (2008); "inequitable," *Nat'l Union Fire Ins. Co. v. United States*, 19 Cl. Ct. 188, 190 (1989); "unfair and unworkable," *Yankton Sioux*

*Tribe v. United States*, 84 Fed. Cl. 225, 226 (2008); "badly drafted," *Keene Corp.*, 508 U.S. at 222 (Stevens, J., dissenting); and a "trap for the unwary," *d'Abrera v. United States*, 78 Fed. Cl. 51, 56 n.10 (2007); *see Vaizburd v. United States*, 46 Fed. Cl. 309, 310 (2000). This criticism is well-deserved, as the outcome of this case amply demonstrates.

For the reasons stated above, defendant's motion to dismiss this case for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims and 28 U.S.C. § 1500 is therefore **GRANTED.** The Clerk shall close the case. No costs shall be awarded.

**IT IS SO ORDERED.**

s/ Victor J. Wolski

**VICTOR J. WOLSKI**
Senior Judge